IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION



FILED

MAR 19 2018

Clerk, U S District Court
District Of Montana
Helena

| | |
|---|---|
| CONTRACTORS BONDING AND INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>BRYAN SANDROCK, a Montana Resident,<br><br>    Defendant. | No. CV-16-116-H-SEH<br><br>**MEMORANDUM AND ORDER** |

## Background

In 2006, Vibeke DeTienne ("Vibeke") and Kevin DeTienne ("Kevin"), mother and son, undertook to open a casino ("Custer Avenue casino") in Helena, Montana.[1] "'The Train Station, LLC' was formed to own and lease the casino property."[2] A separate entity, The Money Train, LLC, was formed to operate the casino.[3]

---

[1] *See* Doc. 32 at 2.

[2] Doc. 32 at 2.

[3] *See* Doc. 32 at 2.

The DeTiennes obtained a loan from Byran Sandrock ("Sandrock") "to finance the Custer Avenue casino."[4] As part of the transaction, Sandrock received "a 50% membership in the Train Station."[5]

"Vibeke DeTienne died in December 2007."[6] Prior to her death, she established The Vibeke DeTienne Trust ("Trust") and "transferred her 50% interest in The Train Station to [the Trust.]"[7]

Probate proceedings for Vibeke's estate were commenced in February 2008 ("probate action," Cause No. 08-5076).[8] Kevin "was appointed as personal representative"[9] and was named as trustee of the Trust.[10] He also became "a member of The Train Station based on his status as the trustee" through a "substitution of member agreement" June 2008.[11] The Train Station's Custer

---

[4] *See* Doc. 32 at 2.

[5] Doc. 32 at 2.

[6] Doc. 32 at 2.

[7] Doc. 32 at 2.

[8] *See Detienne v. Sandroc*, 400 P.3d 682, 684 (Mont. 2017)("*Sandrock II*")

[9] Doc. 32 at 3.

[10] *See* Doc. 32 at

[11] *Id.*

Avenue casino was leased to The Money Train upon completion of construction.[12]

Starting in 2009, Kevin began to deposit lease payments for the casino property into The Money Train's bank account instead of depositing the payments into the building owner's account.[13] Sandrock filed suit against Kevin in November 2009, claiming Kevin had breached the lease and seeking eviction of the casino property ("eviction action," Cause No. 09-1105).[14]

A preliminary injunction against Kevin was issued in the eviction action on January 20, 2010, proscribing him from entering the casino property.[15] Kevin timely appealed the injunction to the Montana Supreme Court (*"Sandrock I"*).[16]

"In February 2010, while the appeal to the Montana Supreme Court in *Sandrock I* was pending, Sandrock transferred the Custer Avenue casino property from The Train Station, LLC, to GG&ME, LLC ("GG&ME")."[17] He, as the managing member of GG&ME, also leased the Custer Avenue casino to Draes,

---

[12] *See Id.*

[13] *See Id.*

[14] *Sandrock v. DeTienne* (Mont. 1st Jud. Dist. Ct., Lewis & Clark, No. DV-2009-1105).

[15] Doc. 32 at 3-4.

[16] *See* Doc. 32 at 4; *See also Sandrock v. DeTienne*, 243 P.3d 1123 (Mont. 2010).

[17] Doc. 32 at 4.

Inc. in February 2010.[18] Deryl Rae Sandrock, Sandrock's wife, is the sole shareholder of Draes, Inc.[19]

Kevin filed for declaratory judgment against Sandrock on March 15, 2010, ("declaratory action," Cause No. 10-262), "alleg[ing] that Sandrock had unlawfully transferred The Train Station's property without the consent of the Trust," and that as a consequence "Sandrock owed [Kevin] and the Trust damages."[20] In November 2010, the Montana Supreme Court in *Sandrock I* affirmed the preliminary injunction order in the eviction action and stated that the parties "may proceed on the merits before the District Court."[21]

In December 2014, the probate action, the declaratory action, and the eviction action were consolidated into a single proceeding ("The Casino Case").[22] Pleadings were realigned to designate Kevin, the Vibeke DeTienne Trust, the Train Station, LLC, and The Money Train, LLC, as plaintiffs and Sandrock, GG&ME, LLC, and Draes, Inc as defendants.[23]

---

[18] Doc. 32 at 4.

[19] *See* Doc. 32 at 4.

[20] Doc. 32 at 4.

[21] *Sandrock I* at 1130; Doc. 32 at 5.

[22] *Sandrock II* at 685; *See* Doc. 32 at 5.

[23] *See* Doc. 32 at 5.

The realigned plaintiffs filed a Second Amended Complaint ("SAC") on August 11, 2015.[24] Defendants were directed to respond.[25] No answer to the SAC was filed as ordered.[26] Default was entered.[27]

Kevin next moved for default judgment and a determination of damages.[28] A hearing was set for November 30, 2015.[29] "Sandrock moved to set aside the default" judgment shortly "before the damages hearings was scheduled to begin."[30] The motion was denied.[31] Sandrock hired new counsel and again moved to have the default set aside.[32] The second motion was denied.[33]

The district court held two damages hearings.[34] A judgment and judicial decree against Sandrock was entered on September 28, 2016, which expelled

---

[24] *See* Doc. 32 at 5-6; *See also* Doc. 1 at 3.

[25] *See* Doc. 32 at 5-6.

[26] *See* Doc. 32 at 6.

[27] *See* Doc. 32 at 6.

[28] *See* Doc. 32 at 6.

[29] Doc. 32 at 6.

[30] *See* Doc. 32 at 6.

[31] *See* Doc. 32 at 6.

[32] *See* Doc. 32 at 6.

[33] *See* Doc. 32 at 6.

[34] *See* Doc. 32 at 6.

Sandrock from The Train Station, LLC and awarded the realigned plaintiffs: (1) $2,083,171 in monetary damages; (2) interest; (3) $150,000 punitive damages; and (4) attorneys' fees.[35]

On October 12, 2016, 14 days after entry of judgment, Sandrock's insurance broker notified Plaintiff Contractors Bonding and Insurance Company ("CBIC") of the September 28, 2016, Judgment.[36] The October 12, 2016, notice of judgment was the first notice provided to Plaintiff of a claim against its policies arising out of The Casino Case.[37] The notice included a copy of the September 28, 2016, judgment and no additional clarification.[38]

After receiving the notice, Plaintiff agreed to provide a defense of Sandrock in The Casino Case subject to a complete reservation of rights, "including the right to withdraw from the retention of defense counsel and [to] file a declaratory judgment action asking a court: [(1)] to declare [the Plaintiff's] Policies do not cover the allegations against you in the suit;"[39] and (2) asking to recoup to the

---

[35] See Doc. 32 at 7, See also Sandrock II, at 686.

[36] See Doc. 32 at 7-8.

[37] See Doc. 32 at 7-8; See also Doc. 32-1 at 2; See also Doc. 32-1 at 156-157; See also Doc. 32-1 at 181.

[38] See Doc. 32-1.

[39] Doc. 32-1 at 181; See Doc. 32 at 8.

costs advanced by Plaintiff for Sandrock's defense.[40]

Sandrock, without success, endeavored to persuade "the trial court to reverse the September, 2016, [order]" before appealing to the Montana Supreme Court (*Sandrock II*).[41] No appeal was taken from the portions of the District Court's order restoring title of the Custer Avenue Property to The Train Station and terminating Sandrock's status as a member of the LLC.[42]

On appeal in *Sandrock II*, Sandrock argued: (1) that the district court's denial of his motions to set aside the default and the subsequent default judgment was an abuse of discretion; and (2) that the District Court erred "in multiple ways" when calculating the damages Sandrock owed to Kevin.[43] Both the denial of the motion to set aside default and denial of Sandrock's request to vacate the default judgment were affirmed, the Montana Supreme Court concluding that "[t]he record does not support a finding that counsel abandoned Sandrock[.]"[44]

The merits of the damages issue were not addressed on appeal as the district court record did not permit the Montana Supreme Court "to discern how the

---

[40] *See* Doc. 32-1 at 181.

[41] Doc. 32 at 9.

[42] *See* Doc. 32 at 10.

[43] Doc. 32 at 10; *Sandrock II* at 691.

[44] Doc. 32 at 10; *Sandrock II* at 689.

District Court used these amounts to establish the amount of damages awarded."[45] The case "was remanded with directions 'for an order setting forth . . . calculation and determination of damages.'"[46]

On December 11, 2017, the district court issued an order recalculating and clarifying damages as required by the remand.[47] Kevin, the Vibeke DeTienne Trust, the Train Station, LLC, and The Money Train, LLC, were awarded: (1) $1,291,635, for lost profits to the Money Train and to the Train Station, after deduction of defendant's initial contribution of $120,000; (2) $150,000 in punitive damages; and (3) $42,009.05 in attorneys' fees and costs.[48] The court's September 28, 2016, judgment and decree were reaffirmed as amended.[49] On December 13, 2017, Sandrock appealed the December 11, 2017, order and on December 27, 2017, the realigned plaintiffs cross-appealed.[50]

---

[45] Doc. 32 at 10 (citing *Sandrock II* at 691).

[46] Doc. 32 at 10 (citing *Sandrock II* at 691).

[47] *See* Doc. 47-1.

[48] *Id.* at 20.

[49] *Id.*

[50] *Detienne v. Sandrock*, DA 17-0726 (Mont. 2017).

Discussion

This declaratory judgment action was filed to determine Plaintiff's obligations as Sandrock's insurer under a primary policy and a separate umbrella policy, issued to The Train Station.[51] The primary policy was a commercial lines contract that provided coverage for certain "property damage" and "personal and advertising injury" liability of its insured.[52] The umbrella policy was "an excess policy that [covered] certain of [the] insured's liabilities."[53]

Both policies contained identical notice conditions that required insureds to provide timely notice of any occurrence, claim or suit. The notice conditions provided:

> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> (1) How, when and where the "occurrence" or offense took place;
> (2) The names and addresses of any injured persons and witnesses; and
> (3) The nature and location of any injury or

---

[51] Doc. 1.

[52] Doc. 32 at 8.

[53] Doc. 32 at 8.

damage arising out of the "occurrence" or offense.

b.  If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.  You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.[54]

---

[54] Doc. 32-1 at 127.

On November 7, 2017, Plaintiff moved for summary judgment,[55] accompanied by a brief in support,[56] and Plaintiff's Statement of Undisputed Facts[57] (L.R. 56.1(a)), arguing that it was entitled to summary judgment because Sandrock's notice was late and Plaintiff was prejudiced by late notice. Defendant filed a brief in response[58] on November 22, 2017, but did not file a statement of disputed facts as required by L.R. 56.1(b).

No material issues of facts are in dispute. On January 24, 2018, the Court ordered that Defendant's failure to file a Statement of Disputed Facts to Plaintiff CBIC's Motion for Summary Judgment on Late Notice[59] was "deemed an admission that no material facts are in dispute,"[60] leaving for the Court to determine whether Plaintiff was entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a) states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the

---

[55] Doc. 30.

[56] Doc. 31.

[57] Doc. 32.

[58] Doc. 36.

[59] Doc. 30.

[60] Doc. 45 at 2.

record the reasons for granting or denying the motion."

Montana applies the notice-prejudice rule, requiring that a carrier, to avoid defense and indemnification, must show prejudice from the lack of notice.[61] The purpose of the rule being to safeguard an insured from termination of coverage based on a "technical violation of the policy when that violation is of no prejudicial consequence to the insurer."[62] However "an insured who fails to provide required notice to the insurer does so at his or her peril. If the insurer is able to show prejudice arising from the lack of notice, the insured may not be covered by the policy.[63]

*Steadele v. Colony Ins. Co.* is on point.[64] There, the Montana Supreme Court found prejudice when the insurer did not receive notice of the claim, noting that the insurer "was prejudiced in that it was deprived of the ability to investigate, to locate witnesses, to appoint counsel, to engage in discovery, to negotiate a

---

[61] *Atl. Cas. Ins. Co. v. Greytak*, 350 P.3d 63, 67 (Mont. 2015)("An insured's technical or illusory failure to comply with obligations of a policy will not automatically terminate coverage, and an insurer who does not receive timely notice required by the terms of an insurance policy must demonstrate prejudice from that lack of notice in order to avoid the obligation to provide defense and indemnification of the insured.").

[62] *Id.* at 68 (Rice, J., concurring).

[63] *Id.* at 67 (citing *Steadele v. Colony Ins. Co.*, 260 P.3d 145 (Mont. 2011).

[64] 260 P.3d 145 (Mont. 2011).

settlement, and to develop a trial strategy."[65] Notice provisions provide an insurer with "the opportunity to defend its interests and to prevent or mitigate adverse judgments."[66]

Sandrock had a duty to provide timely notice in the event of an "'occurrence' or an offense which may result in a claim"[67] as required by the policies. Sandrock's notice to Plaintiff was post-judgment and wasn't provided until years after the underlying case was filed, resolved on the merits, appealed and affirmed as to liability on appeal. At the very latest, notice was due March 15, 2010, when Kevin filed the declaratory judgment suit alleging that Sandrock had unlawfully transferred The Train Station's property without the consent of the Trust and seeking damages as a result. The notice first provided on October 12, 2016, after judgment was entered, was undeniably and inexcusably late.

Notwithstanding that Sandrock argues that "[t]he case was far from over"[68] when Sandrock's broker first provided notice in October 2016, the court in The Casino Case at that point had already entered judgment on liability against

---

[65] 260 P.3d at 151.

[66] *Id.* at 150.

[67] Doc. 32-1 at 127.

[68] Doc. 36 at 2.

Sandrock, and the validity of the judgment had been affirmed on appeal. Sandrock's failure to notify the Plaintiff went far beyond a mere technical violation of the policies. The notice, provided only after judgment was entered, prevented any opportunity to investigate the facts, find witnesses, hire counsel, undertake discovery, negotiate a settlement, or devise a strategy for trial.[69] The Montana Supreme Court has made clear that "an insured who fails to provide required notice to the insurer does so at his or her peril."[70] Sandrock, at his own peril, neglected to notify his insurance company. Plaintiff was materially prejudiced. It is entitled to summary judgment.

ORDERED:

1. CBIC'S Motion for Summary Judgment on Late Notice[71] is GRANTED.

2. Sandrock has no coverage under Plaintiff's policies.

3. Plaintiff has no obligation to defend or indemnify Sandrock.

4. Plaintiff is entitled to withdraw from the defense of Sandrock.

---

[69] *See Steadele*, 260 P.3d at 151.

[70] *Greytak*, 350 P.3d at 67.

[71] Doc. 30.

5. The Clerk is directed to enter judgment in favor of Plaintiff.

DATED this 19th day of March, 2018.

*[signature: Sam E. Haddon]*
SAM E. HADDON
United States District Judge